Good morning, Your Honors. Suzanne Lashley on behalf of Mr. Perez-Jimenez. Ms. Lashley. I'll begin with the issue of the government's failure to collect evidence in this case. Namely, the government failed to collect a roster of inmates that were held at Terminal Island during the time of the incident, which was August of 2002. Could you clear up something for me about the roster? Yes, sir. One possibility, and I wasn't totally clear on which it was, is that the roster routinely gets destroyed after a month or two. A request was made for the roster, but the request was not made until after the usual time for destruction, and it had been destroyed, and there was no tip to the prison, or I shouldn't say tip. There was no request from the defense to the prison, please preserve the roster. The other possibility is roster routinely gets destroyed, but there was a request before it was destroyed. If you could hold on to this roster, it bears on a felony case that's coming up. It's evidence. And then they destroyed it anyway. Could you tell me which it was? It would have been the latter, the former situation, in that there was no request, and the reason being that the case was not indicted until approximately 16 months later. So Mr. Perez-Jimenez was not represented until that time, and the defense would not have been in a position to make a request. However, our position is that certainly the government was. The government was aware of the facts incident to this case. The Terminal Island is a Bureau of Prisons facility, and the government could have requested that the roster be maintained. Is there a duty on the government under some situation where there's no indictment pending to kind of gather up a case for the defense? I haven't heard that one before. No. Right, Your Honor. I'm not aware of an explicit duty in the case law that the government preserve pre-indictment. However, the government was aware, presumably, since they were investigating the case, that there might be a prosecution of this case and that witnesses, percipient witnesses and character witnesses in the case would be important. So only the government was in a position to preserve that evidence. Let's get right to the bottom line. The government, you've asked for the broom, you've asked for the unit roster, but is there anything in the record that shows that this was done in bad faith? Well, what I would point to in the record is the fact that, one, obviously, the government had control of that evidence. And secondly, that specifically as to the broom, the broom was in the crime scene. It was in the photos the government presented in evidence. I understand, but you're not answering my question. The standard is that you have to show, if you're going to get anywhere with this, you have to show that the government acted in bad faith to destroy this evidence. And I'm asking you, counsel, whether there's anything in the record that shows that the government acted in bad faith in the disposition of either the broom or the unit roster. Unfortunately, with bad faith, when the defense is put in a position of having to show bad faith, as the Court's aware, it's usually by conjecture or putting together a set of facts. And in this instance, those are the facts that I would point to are that the broom was not simply leaning against a wall, as a broom might be, and the government tried to argue, but really in the crime scene, that the investigator of the case conceded that a broom can serve as a weapon, and that the victim, in this case, Mr. Mesa, acknowledged having used the broom. All those facts were before the investigators, and they acknowledged that their job, he acknowledged, the investigator, that it was his job to preserve the evidence at the scene. With all those facts put together, they still failed to preserve this broom. Essentially. But that is your evidence of bad faith as you view it, right? That's correct, Your Honor. There's no evidence that the prosecutors got together with the people in the prison and said, gee, we've got to get rid of this. No, nothing of that nature, no, Your Honor. Did your guy tell them, hold on to that broom, that's what he attacked me with? No, sir. My client did not make any statements at the time of arrest. So he did not make any of that nature. And that's actually another fact that I omitted, is that the government's answer to why they didn't preserve the broom is that Mr. Perez Jimenez failed to state that the broom was employed. And putting the burden on the defendant to make a statement has obvious implications in the Fifth Amendment and is in the appropriate – it inappropriately shifts the responsibility of preserving evidence from the investigators to the defendant to point out. And it's really hard to believe that that's what the investigators used. How are they supposed to know? Ordinarily, you destroy the roster records. Ordinarily, if there's a broom laying on the floor, you put it away. How are they supposed to know to preserve the broom or preserve the rosters? I think in this instance, at least as to the broom, they would have known because it was laying on the floor. I think it's an important fact that it was there laying on the floor at the crime scene in the government's own crime scene photos. I think that stands out the most. So presumably, the job of the investigator is to take any possible evidence when they don't have the full story to collect anything that could present evidence, and then that shifts us to the roster, which is in a unit at the prison with 128 inmates housed and several witnesses acknowledging that other inmates were around at the time of the assault. They were aware that there could have been other witnesses, and they didn't bother to try to interview them or preserve their names. Counsel, with respect to the broom, there was a photograph that was taken of the broom, I believe. Since that existed and that was available, what other evidence is there that you wanted to present that you could not present because of the missing broom? The concern would have been obviously for fingerprints, if it was possible to retrieve any fingerprints. I think where the victim or also inculpatory evidence would have been relevant and is discoverable. Fingerprints of my clients could have been on there. So either one. Also, any splinters, any analysis. I mean, not being a forensic pathologist of any kind, I can't detail too much, but I would be curious to know whether there were missing, I believe it was a wood broom, missing elements of the broom itself in addition to fingerprints. But it's conjecture based on your part. There's really no, you don't have anything other than what you just said that would have come from having the broom available. That's correct, although it's clear that the broom was used. So unlike the situation in, if I can compare it, Valenzuela, Bernal, where the witnesses were deported, they were actually interviewed and we knew that the evidence, that there was no evidence there. Here, we knew this item, it's difficult to compare people on items, but we knew this item was employed in the crime and no analysis was conducted at all. So the loss of evidence was more significant than the case like Trombetta or Valenzuela-Bernal because it was clearly an element of the case. And that's. Do you want to say anything about the limiting of the impeachment? Yes. I can proceed to that. The defense presented evidence that the victim had prior convictions and notably the ones I emphasized in my brief were convictions for misdemeanors involving violence and, I'm sorry, convictions for misdemeanors involving misrepresentations and deceit and also prior acts involving violence. So as to the misdemeanor convictions involving deceit, those would have been admissible under 609A2, which allows the admission of evidence involving prior convictions involving some element of deceit. The Court essentially just applied the first part of 609 and said any conviction that didn't meet the time frame of 10 years shouldn't come in. It's too old. And essentially truncated. But isn't that 609B? Yes. So the Court wasn't off base in drawing the line of 10 years. Right. Sorry, Your Honor. But that is not a blanket rule, I guess. And that's the problem. And even at trial it was suggested to the Court that that is not a blanket rule and that the Court still has discretion to admit priors even if they are older. And in this instance they were particularly relevant because they did show a deceitful nature over a course of time. It wasn't just a prior conviction in 1980, checking the dates. There was a prior conviction in 82 and 89. So it wasn't simply just the 1982 conviction for bringing alcohol into a jail that was sought to be admitted, but also a seven-year later conviction for petty theft or shoplifting involving wearing the clothes out. And both those involved deceit. The concern is that the Court applied the blanket timeline without making the analysis of what or whether deceit was involved at all. They used the timeline. The Court used the timeline as the absolute bar. And that is not how 609 is to be read. There is a further analysis that the Court has to conduct under 403. In addition, the prior violent acts of the victim under 404B were admitted and the Court has to conduct any analysis of whether those violent acts should be admitted. Notably, a prior assault that was very similar and could have been admitted under 404B. Was it similar? My recollection, and I could be mixing up one case with another, was that he beat up his wife or girlfriend, which is a little different from beating up a fellow inmate. Right. Right. Obviously the individuals attacked were different, yes, Your Honor. But the similarity in the ---- There are people that just beat up people that are smaller than them. The similarity lay in the utensil, I guess, partly. There was a baseball bat and here there was a broom and beating up someone weaker. In addition, to the extent that this could have been gone into at all, he misrepresented his role in the attack, just as he or at least the defense's position was in this case, just as he did here. He misrepresented that he was the victim at the time. Counsel, what's the standard of review that we're to ---- with which we are to examine the district court's ruling on 609B? For the admission of evidence, generally it would be abusive discretion. However, the interpretation of 609 and actually how to apply it is a question of law, and therefore de novo review is applicable, as it would be with 404B, similar standard of review. So the concern with these items of evidence that were precluded is that they were relevant. Now, the attenuation of time merely goes to argument, essentially, and the weight of the evidence, but not whether it's admissible. There were no other legitimate interests to protect with respect to the victim. Other priors came in. It was quite clear to the jury that both individuals involved were inmates and had records. So there was not the usual concerns one sees in these types of cases. And so ultimately the jury was left with this incomplete picture of the individual who was the victim, his violent nature and his propensity towards deceit. And the failure to provide that information to the jury obviously was prejudicial and prevented Mr. Perez from properly cross-examining the victim. You make a good point, though, that the jury was well aware that you had two inmates with violent histories, if you will. Do you have anything you can share with the court about why you think this was prejudicial error? I know you're contending that it's error, but why would this be prejudicial? Why wouldn't the jury be able to filter this out and figure out there are a couple of tough guys here, you know, and one of them beat the other one up. We're to decide whether this was unprovoked, whatever it was, and make a decision. How in is the defendant prejudiced by the omission of a 10-year-old-plus conviction? In two ways, in a sense. The Mr. Perez was not able to introduce the relevant priors, and I think that's the biggest concern. Although the priors came in under the strict reading, the prior burglaries came in under strict reading, really attacking the victim's violent nature and his propensity for deceit was not thoroughly fleshed out. And so if the object is a search for the truth to some extent, that was truncated by the court's ruling. Well, it will stipulate that rarely is truth per se found in most trials, but given the rules of evidence, given the system under which we operate, how was your client truly prejudiced by the omission of this evidence? He got some evidence in. Clearly the jury knew that the other person, the victim in this case, was not a really wonderful, outstanding citizen. But how would the introduction of that evidence have really changed anything in the eyes of the jury? I think that, well, the prior attack on his girlfriend was particularly significant because of its 404b nature in the sense of the similarity that at least I see with the instant offense. And I would add to that that the prejudice lies also in the procedure that was employed and that the district court completely failed to apply 404b. So looking at it just from a procedural perspective rather simply than how the jury might have seen it, there's that concern as well, that the jury didn't get the full picture and Mr. Perez-Jimenez didn't get the full value of a 404b analysis by the district court. I'll proceed quickly to the issue of self-defense. Mr. Perez-Jimenez, sorry. If you want to save any time for rebuttal, you know, you control it. I might do that, actually, looking at the balance of my time, if I can. You may do so, counsel. That's fine. We'll hear from the government. Good morning. Rebecca Swamy for the government. I have a question for the government. Yes. I can see how every ruling that the judge made was defensible, and even if it was not shown to be so prejudicial as to require reversal. Nevertheless, I don't understand why this stuff was kept out. I don't understand why the prosecution would object. You've got two inmates fighting each other. My own experience of jury trials is they usually do produce a true verdict. Back when I was a trial lawyer and a trial judge, they worked pretty well. But they don't if you make one person out to be an angel, which he's not, and the other one out to be a total villain, which he's not. I don't understand why you didn't let in the old crimes, for example, why you objected. Sure, they're stale, but on the other hand, the guy's been locked up in prison. He wasn't outside where he could beat people up with baseball bats. It's just not as convenient in prison to go beat up your girlfriend with a baseball bat as when you're in the apartment. And that shows he's a real violent, dangerous, scary guy. It really matters. Wearing the clothes out of the store shows he's kind of a dishonest guy. Why not just let it all in and let the jury figure out what happened? Well, Your Honor, what I would say to that is that the jury did have an awful lot of evidence about this guy. They didn't have this evidence, though, right? They did, but they had his 1997, 1998, and 2000. Was that burglary not in a dwelling? Those are all felony burglary convictions. Burglary not in a dwelling? Excuse me? Listen to me. Burglary not in a dwelling? It was second-degree burglary. Was it in a dwelling or not in a dwelling? I don't know for sure. Nighttime or daytime? I don't know for sure. When somebody sneaks into a store at night and steals some stuff out of the store, jurors are likely to think, sleazy guy, but not scary guy. Somebody who sneaks into a house at night when the people are there, scary guy. That's why I'm asking you. Well, Your Honor, in terms of evidence that goes to violence or propensity, Rule 405 says that opinion and reputation evidence would have been admissible. And certainly the court allowed it. I know what the rules are. I was really asking about the exercise of discretion, not only by the judge but by the prosecutor. I just can't figure out why this evidence, why you wouldn't want the jury to decide the case. But, Your Honor, it was really a balancing. They also knew about his immigration violations. Big deal. Well, they knew about the news. A lot of California has immigration violations, and they don't beat people up with baseball bats. Well, not a lot. But he did have three felony convictions. It certainly showed he was a repeat offender. They were able to question him about immigration violations, about the fact that he had been in prison four years before this stabbing occurred. They were able to cross-examine him about using aliases. Okay. We have one question on this line in all likelihood, and that is who started it and who was in danger and that. Except that, Your Honor, there was a lot of evidence in this case that the defendant actually lay in wait for this victim. He admitted on the stand that he snuck a metal box cutter blade past two metal detectors into a housing unit where no one, including the guards, were. Sure. And each of them says it's because they were scared of the other guy. One says, I picked up a broomstick because I was scared of the other guy. One says, I took a shiv with me because I was scared of the other guy. Except, Your Honor. It's nice to have a jury decide which one was really scared of the other guy and which was the initiator. Except that the facts here, Your Honor, are that the defendant's self-defense claim was not that somebody was about to hit him with a broom and, therefore, he whipped out a box cutter blade and slashed the other side. That's not what he testified to. His self-defense was hours earlier at his workplace at Unicor. He had some kind of alteration with the victim. He then got another inmate to give him a box cutter blade, and then he snuck that into the prison, which is why the unit roster and the broom both lose some of their relevance and value in this case, because his self-defense argument was somebody was extorting money from him. Moreover, in this case, this defendant had been in the witness protection program the entire time that he was in Federal prison. He knew very well that there were ways in which he could have, if he did feel threatened, have responded to that threat short of using a box cutter blade. What ways, except by being a snitch? Well, Your Honor He could certainly have gone to a counselor for assistance. All of the testimony that we put on in rebuttal as to Tom Short talked about how this victim had come to Terminal Island, needed medical assistance, was able to secure preferred housing. The unit where this happened, the F unit, was a preferred housing unit. And this inmate, of all inmates, certainly understood how to get resources in the prison. Moreover, Your Honor, I'd like to make a clarification about the hallway and the bathroom in this case. The assault, where the blood, where you see the blood on the floor, actually happened in the hallway. And the bathroom, at no point did the defendant or the victim say anything about there being other inmates in the bathroom, so that the relevance of that roster is definitely diminished by that. I would argue, Your Honor, that I thought the importance of the whole roster argument was you never knew you were supposed to preserve it until it was until after it was gone. I do believe that's one of my best arguments, because to me it's obvious that it would be great to have the roster because it gives you a way to look for witnesses, kind of like a police report that shows who was at the car accident scene. Absolutely, Your Honor. It would have been helpful for the government both to have the broom and to have the bad faith is certainly not established here. It would have been very helpful for us on both of those accounts. But what happened with the prison system is that there's just a computer system which automatically purges. I don't know how frequently. There was no intentional action on the part of any of the officials. It's not as though we had a roster and we destroyed it. We never had a roster. Ms. Treswami, we know from your opponent, if you will, what did not come in. What did come in in terms of priors with respect to the defendant in this case? What evidence of priors? As to the victim in the case, there was the 1997 felony conviction, the 1998 felony conviction, and the 2004 felony conviction. And the jury was also informed that he actually committed the 2004 conviction. It was committed in May of 2003. So they knew that shortly after he got out of prison, he committed another crime. Okay, and could you just quickly detail the nature of each of those instances? I want to get some sense as to what the jury did hear. They heard that all three of them were second degree burglaries. Okay, and? Because the court did limit how much they could go into the facts of those convictions. Following up on what Judge Kleinfeld said, did it describe where the burglaries took place? I mean, were they in a house, were they in a store, did they say? No, they did not, Your Honor. Okay, and what about the 2004? They knew that it had actually occurred in May of 2003, and they knew that he sustained a conviction in 2004, which was the year of the trial. Okay, but was there any testimony about violent acts against anyone? There was no opinion or reputation testimony is submitted, no, Your Honor. Okay. What does second degree burglary mean in California? I believe it means breaking an entry and stealing something. Daytime, nighttime, residence, you don't know? None of those facts were brought into evidence before the jury. I didn't ask that. I'm sorry? I asked what second degree burglary meant. At common law, burglaries are sorted out by daytime, nighttime, residential, non-residential. Most states, when they've codified burglaries, have followed some parallel scheme, so I asked you what second degree burglary meant in the statute. I'm sorry, I can't answer that question. All I know about the facts of the May 2003 burglary is that he broke into somebody's garage and stole a TV. Stole something out of a garage? Yes, Your Honor. Open door or closed door? I don't know that, Your Honor. As to the discovery issues, what I would ask the court to keep in mind is what the officers actually knew at the time of the assault. When they got to the prison area where this assault occurred, there was two eyewitnesses that told them that the defendant was on top of the victim stabbing him. The only two people that could have told them anything about the broom were not available to the officers. The defendant did not make any statement about the broom, and the victim was rushed to the emergency room where he was treated for another two hours. I'd like to just speak briefly about the cell. Before you move on to the next topic, let me get a little further on something. If I were still a district judge and I were trying this case, I would have let in the prior bad acts of the victim. For one thing, they may have some relevance on whether he was a violent guy who initiated the attack. And for another thing, all of the case law says that the protectiveness against the prejudice of prior bad acts evidence goes mainly toward the defendant. And when it's not the defendant, it should be more liberally admitted. I would have admitted it. So the question for me is not whether the judge properly kept it out, it's whether he abused his discretion by keeping it out. Now, there are a whole lot of things where an appellate judge says, I would have done it differently, but it's not an abuse of discretion. Give me in a pithy way why it's not an abuse of discretion. Well, first, as to the domestic violence arrest, Your Honor, that would have been a trial within a trial. It was only an arrest. There was – if you look at the excerpt of record on this, there's argument back and forth between the defendant and his girlfriend about what actually happened in the incident. The defendant claimed that she brought out a knife. She claimed that he hit him over the head – hit her over the head with a broomstick. So that would have been a very difficult – Did it ever go to trial? No, Your Honor. It's simply an arrest. There was no conviction. Dismissed at some point or – I don't know that it was dismissed, but there was no conviction as to that issue. Then as to the issue of bringing alcohol into the prison, if you look at the excerpt of record at ER 50, you see that what – all it says is that he brought alcohol into the prison. We don't know how he brought alcohol into the prison. So we don't really have facts to say that that was an act of dishonesty. And, in fact, the district court made the finding that none of the misdemeanors went to the issue of dishonesty. And in line with – Well, shoplifting does, doesn't it? Your Honor, I believe in Ortega's panel held that shoplifting does not necessarily go to dishonesty. So you – well, the word necessarily is the word that interests me there. I mean, you'd be as ready to believe somebody who'd snuck out of a store with unpaid foreclothes on his back as somebody who had never done anything like that? No, but, Your Honor, the fact that I already know he has three felony convictions tells me that he's not a lovely individual. I feel I do have quite a lot – the jury did have quite a lot of information about the fact that this man repeatedly did commit crimes. I don't get that. I mean, we get all these cases. The felony is reentry into the United States having been deported without the approval of the Attorney General. Well, a lot of people come back, their family is here, and they're not supposed to do that, and it's a felony, and they get a lot of time for it. But a juror, a fair number of them are likely to say, gee, my aunt could have been convicted of that. But in fairness, Your Honor, there was also a tremendous time delay here. All of these incidences that defense counsel raises happened in 1982, 83, 85, 89. The trial was in in 2004. It seemed that they – the jury had plenty of time to go through and there was plenty of evidence of recent criminal conduct before then. If I could turn to the final issue of the self-defense prong, as I mentioned before, there was a lot of evidence about the fact that the defendant lay in wait for the victim. And the defendant, during this three-day trial, never once objected to the introduction or line of argument that the government made concerning the prison conditions. They never – he never suggested any alternative jury instruction. In fact, he presented this type of evidence himself. And I would argue, Your Honor, that this evidence is absolutely essential for the jury to be able to make a determination as to whether or not it was reasonable that the defendant thought there was no other option for him but to engage in armed assault. The testimony that the government put on as to Tom Short and as to the various other prison officials was that the jury went to the fact that this prison was a prison in which the defendant had over and over again received the assistance that he needed and that he did have other options versus an armed assault with a boxcutter blade. Is evidence of the availability of an alternative to the use of force ever relevant in a self-defense claim as opposed to a justification defense? Well, Your Honor, I think what this Court held in Biggs is that it's not the – a prison inmate is not required to establish that element in order to bring forward a self-defense defense. However, so it basically creates a circuit split with the Seventh Circuit, which is held otherwise. But that type of evidence about the prison conditions, about the prison rules, about the type of help that prisoners can get in the prison is obviously going to be important in any prison assault case. Anything further, Counsel? Nothing further, Your Honor. Thank you, Counsel. Ms. Locklear, you have some reserved time. Thank you. First, as to the issue of the preservation or the collection of evidence, the government emphasizes that there were no witnesses that testified that there were – there was not anyone in the bathroom. But that sort of begs the question. The lack of witnesses is there because of the lack of a roster or any ability to seek out these witnesses and find out who was there. There is clear evidence in the record that there were witnesses around, both from the government's witnesses and from Mr. Perez's – he meant his testimony. And that's uncontroverted. The government discusses that this was not an intentional action, and we can see that it's not an intentional action. That's not the standard, however. Bad faith certainly has been shown by, as I mentioned earlier, putting together a series of facts that would suggest the government certainly was aware that there was relevant evidence and just – and omitted. At best, it was grossly negligent, but at worst, exhibited bad faith. In this instance, we'd say, again, just as the case law has found bad faith through putting together evidence, that the evidence is there in this instance because – because the roster – the government was most aware that there were witnesses around, having interviewed a few people. And that's also in the record. They did interview people who were at the scene at the time. They got the witnesses they needed who testified at trial, but they failed to find out and they failed to take notes of any interviews of other witnesses. I would also note that the Supreme Court in Arizona v. Youngblood conceded that the relevance and the importance of lost evidence is raised – I hope I'm not – I'm Essentially, they said that in Arizona v. Youngblood, because the government failed to use the evidence in its case in chief at trial, the exculpatory nature or value of the evidence was decreased. In this instance, the exact opposite occurred. The government affirmatively used the absence of witnesses in its case in chief, elicited testimony about the absence of witnesses, used it against Mr. Perez Jimenez, and also used the broom – a description of the broom in its case in chief and how the broom could not have been wielded because of its size. So the absence of this evidence that the government was in control of and failed to collect is particularly egregious under these circumstances. Quickly, on the issue of the 404b-609, I would add that although Ortega, as the government points out, discusses that shoplifting need not be a crime involving deceit in this, it leaves the door open that it can be in certain instances, and this Court's opinion in Glenn allows for that fact. So shoplifting is not per se a crime not involving deceit. And in our – on our facts, he wore the clothes out of the store. It was more than simply carrying them out in a bag or taking them off the rack and walking out with them. He actually wore them as his own, and we would suggest that that involves an element of deceit. Finally, on the issue of self-defense, the government continuously emphasizes the availability of alternatives. And again, as this Court held in Biggs, the – that is not an element of self-defense, and by noting the availability of alternatives over and over again throughout its case in chief and in its rebuttal, what the government did is essentially shifted the burden back to Mr. Perez Jimenez to show that he – he availed of – he either availed himself of protection and it didn't work, or that he – that it – that he still felt unprotected somehow. And that is not the standard set out in Biggs for self-defense. This is – it does constitute plain error in this instance because – because the way the government presented the evidence and the fact that it overemphasized over and over again the availability of alternatives could only have confused the jurors. The jurors received instruction that the government had to prove – disprove self-defense in this instance. And the government's presentation of these alternatives that Mr. Perez Jimenez supposedly had effectively would have – could only have confused the jurors as to what the government needed to show as self-defense. It negated the ability of Mr. Perez Jimenez to present self-defense. So it – it does constitute plain error in that it affected jury deliberations. It could only have affected jury deliberations because it conflicted with the instructions that the Court gave. Mr. – finally, I would add – sorry. Did the defense object and educate the judge on this legal – No. There was no objection, and that's why we would be under a plain error standard in this instance. However, I would add that if the government's reading of self-defense applies, especially in the prison context, then self-defense will never lie, at least under the reading that Biggs gives self-defense, because an inmate in a prison is always going to have the ability to go to someone. The question is, under the imminence of a self-defense situation, can they reasonably be able to do that? And Biggs suggests that that's not even a requirement, but even if it's made a requirement in the prison setting, it's really illusory. Thank you. Thank you, counsel. The case just argued will be submitted for decision. And we will now hear argument in United States v. Jarrah.
judges: O'scannlain, Kleinfeld, Smith